UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DIANA RYAN,                           :          Case No. 3:11-cv-191
                                      :
        Plaintiff,                    :          Judge Timothy S. Black
                                      :
vs.                                   :
                                      :
COMMISSIONER OF                       :
SOCIAL SECURITY,                      :
                                      :
        Defendant.                    :

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND
NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED;
(2) THIS MATTER IS REMANDED TO THE ALJ  UNDER THE FOURTH
SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE IS CLOSED**

        This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI").  (*See* Administrative Transcript ("Tr.") (Tr. 25-37) (ALJ's decision)).

**I.**

        On June 11, 2007, Plaintiff filed an application for SSI alleging disability since

December 20, 2002, due to diabetes, GERD, chronic obstructive pulmonary disease, gout,

asthma, and hip and knee pain.  (Tr. 116-117, 197).  The claim was denied initially on

October 31, 2007, and upon reconsideration on March 7, 2008.  Thereafter, Plaintiff filed

a written request for a hearing on April 21, 2008.  (Tr. 25).  At this point it was

discovered that Plaintiff had a prior unfavorable hearing decision on February 23, 2007

for DIB applications filed in March 2004.  (Tr. 25).  In that decision, Plaintiff was determined to retain the capacity for sedentary work.[1]  (Tr. 25).

As to her claim for SSI benefits, Plaintiff requested a hearing where she appeared with her attorney and testified on February 12, 2010.  (Tr. 148).  The ALJ determined that she was not disabled.  (Tr. 64-79).  Specifically, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform work at all exertional levels.  (Tr. 75). The ALJ determined that although Plaintiff was unable to perform any of her past relevant work, she could perform a significant number of jobs in the national economy. (Tr. 84-85).

On April 4, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 85).  Pursuant to 42 U.S.C. § 405(g), Plaintiff commenced this action in federal court for judicial review of the Commissioner's final decision.

Plaintiff was born on March 22, 1967 and is 45 years old.[3]  (Tr. 35).  She has at least a high school education.  (Tr. 35).  Plaintiff has relevant work history as a cook helper, semi-truck driver, and nurse's assistant.  (Tr. 125).

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  20 C.F.R. § 416.967(a).

[2]    The Agency defines RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).

[3]    Plaintiff was 40 years old and defined as a younger individual on the date the application was filed.  20 C.F.R. § 416.963.

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since June 11, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: a history of depression and anxiety (albeit reported mental problems are associated with evidence of malingering) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled low stress work with no assembly line production quotas, no fast pace, and minimal contact with the general public.

5. The claimant cannot perform any past relevant work (20 CFR 416.965).

6. The claimant was born on March 22, 1967 and was 40 years old and defined as a younger individual on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 11, 2007, the date the application was filed (20 CFR 416.920(g)).

-3-

(Tr. 28- 36).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI. (Tr. 37).

On appeal, Plaintiff argues that: (1) the ALJ erred by finding that the *Drummond* ruling is not applicable to Plaintiff when the record does not contain new and material evidence demonstrating medical improvement in Plaintiff's condition; and (2) the ALJ erred by finding that Plaintiff does not have any severe physical impairments. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record reflects as follows:

### 1. *Evidence of Physical Impairments Pertaining to the Prior ALJ Decision*

In March 2004, Plaintiff had a pulmonary evaluation revealing mild obstructive defect with mild response to bronchodilators and she was continued on inhalers and nighttime oxygen.

On June 12, 2004, Plaintiff attended a consultative examination performed by Dr. Engle. (Tr. 119). Her weight was reported as 267 pounds. Plaintiff's chief complaint was that she hurt in all of her joints, and there were many grunts and groans during the examination. On clinical examination, gait was normal; she was able to rise from a seated

-5-

position without difficulty; she was able to heel and toe walk; and mount examination table without difficulty.  There were no neurological deficits, no weakness, and no atrophy.  Although Plaintiff's range of motion was slightly decreased in the spine and joints, x-rays of the lumbar spine showed no abnormalities.  The diagnosis was fibromyalgia.

Plaintiff underwent sleep studies in July 2004 demonstrating moderate obstructive sleep apnea.  (Tr. 119).

Plaintiff was seen by her family physician in January 2005 complaining of back and hip pain, as well as asthma.  (Tr. 119).  There was tenderness noted in the lumbar spine.

Pulmonary function studies completed in March 2006 revealed mild restrictive pattern and a chest x-ray showed a few tiny scatter granulomas.[4]  (Tr. 119).

ALJ Redmond found that Plaintiff was capable of performing a reduced range of sedentary work.  Specifically, he adopted the physical findings from consultative examiner, Dr. Engle.  (Tr. 123).

## 2. *Evidence of Psychological Impairments Pertaining to the Prior ALJ Decision*

On May 24, 2004, Plaintiff attended a consultative psychological examination performed by Dr. Schulz.  (Tr. 120).  On mental status examination, eye contact was moderate, speech was clear and understandable, affect was appropriate and congruent,

---

[4]    Granulomas are small areas of inflammation in tissue due to injury, such as from infection.  Most granulomas do not require treatment.

and mood was euthymic.

On September 21, 2004, Plaintiff attended a second psychological examination performed by Dr. Tanely.  (Tr. 120).  Plaintiff gave long reaction times and frequently sighed.  Her affect was forlorn and eye contact was poor.  The diagnoses were dysthymic disorder[5] and borderline intelligence.

Plaintiff underwent an initial psychiatric evaluation at Samaritan Behavioral Health Center in November 2005.  (Tr. 120).  Plaintiff reported having "blow ups," numerous suicide attempts, and panic attacks.  On mental status examination, her mood was mildly depressed and she reported having both visual and auditory hallucinations. The diagnoses were depressive disorder with psychotic features and learning disorder.

ALJ Redmond adopted Dr. Schulz's opinion that Plaintiff was mildly to moderately impaired in her ability to withstand the stress and pressures associated with day to day work activity.  (Tr. 123).  However, he found that Dr. Schulz's opinion that Plaintiff was only minimally impaired in all other areas of work activity was offered prior to evidence showing an increase in the severity of Plaintiff's dysthymic disorder. Therefore, he accepted Dr. Tanley's statement that Plaintiff's ability to relate to others was moderately impaired and her ability to perform simple, repetitive tasks was mildly impaired.  While Dr. Tanley also opined that Plaintiff was severely impaired in her ability to withstand the stress and pressure of daily work, the ALJ did not accept this particular

---

[5]    Dysthymia is a chronic type of depression in which a person's moods are regularly low.

limitation, finding that Dr. Tanley appeared to have based this statement on Plaintiff's subjective complaints that were not entirely credible.

### 3. Evidence of Physical Impairments Pertaining to the Current ALJ Decision

Plaintiff alleged in her current application that she became disabled due to diabetes, GERD, chronic obstructive pulmonary disease, gout, asthma, and hip and knee pain.  (Tr. 197).

Plaintiff was seen at Berry Health Center beginning around 2005.  Her treating family doctor, Dr. Theriot, completed a form at the request of the BDD on January 1, 2008.  (Tr. 473-475).  The diagnoses included: major depression with psychotic features, dysthymia, diabetes type II, COPD, GERD, morbid obesity, fatty liver, hypothyroidism,[6] mild right carpal tunnel syndrome, and mild right ulnar nerve entrapment.  (Tr. 474).

On September 24, 2007, Plaintiff was seen by consultative examiner, Dr. Danopulos.  (Tr. 419-433).  Physical examination revealed normal but painful motions in both wrists, both hips, knees, and ankles.  Musculoskeletal examination revealed a normal gait without ambulatory aides.  The objective findings were: history of effort related shortness of breath triggered from her obesity and being subjective; entire spine and joint arthralgas;[7] history of gout which was not documented on this examination; non-insulin

---

[6]  Hypothyroidism is a condition where the thyroid gland does not make enough thyroid hormone.

[7]  Arthralgas is discomfort or pain in the joints.

dependent, well-controlled diabetes; exogenous obesity;[8] being on thyroid supplemental therapy for hyperthyroidism; and depression with hot temper.  Dr. Danopulos opined that Plaintiff's ability to do any work related activities is affected in a negative way by her exogenous obesity, which also aggravates her diabetes, her aches and pains all over her body, and tendency for elevated thyroid stimulatis hormone.  Dr. Danopulos found that Plaintiff's shortness of breath was subjective, as her lungs were "clear" and a pulmonary function study was normal.  (Tr. 375).  Despite being obese, Dr. Danopulos noted that she moved freely around the examination room, dressed and undressed normally, and had normal movements.  (Tr. 373).  Lumbar spine studies were normal and painless despite Plaintiff's complaints of low back pain.  (Tr. 374).

On October 26, 2007, Dr. Neiger reviewed the evidence and adopted the prior ALJ's RFC assessment in accordance with Acquiescence Ruling (AR) 98-4.  (Tr. 458).  On March 6, 2008, Dr. Frelhofner affirmed this finding at the reconsideration level.  (Tr. 481).

In December 2007, Plaintiff complained of chronic diffuse joint pain, most intense in the low back area.  (Tr. 477).  Physical examination revealed normal range of motion in knees, elbows, and wrist.  An EMG was performed on December 27, 2007, revealing findings consistent with ulnar nerve compression across the elbow and early mild carpal tunnel syndrome.  (Tr. 472).

---

[8]  Exogenous obesity is caused by excessive food intake.

In January 2008, Plaintiff complained of chronic back pain and bilateral hand swelling and numbness.  (Tr. 476).  On physical examination, there was tenderness and swelling of both hands, normal strength, and decreased sensation.

Plaintiff was noncompliant with treatment in June 2008.  (Tr. 509).  She was not checking her blood sugar and had not improved her diet, as she was still eating "whatever," despite having diabetes.[9]  (Tr. 509).  Plaintiff was not exercising or watching her diet in an attempt to lose weight.  (Tr. 509).  Plaintiff also elected not to go to physical therapy to treat her alleged right shoulder pain.  (Tr. 509).

In October 2008, Dr. Theriot noted that Plaintiff continued to smoke cigarettes, despite having chronic obstructive pulmonary disease ("COPD"), and she was not watching her diet or exercising.  (Tr. 49).

In January 2009, Plaintiff requested that Dr. Theriot fill out paperwork for her SSI application.  (Tr. 543).  Dr. Theriot had filled out such paperwork before, but Plaintiff explained that she needed more "documentation" of her condition.  (Tr. 543).  Dr. Theriot explained to Plaintiff that the objective evidence "did not document severe pathology" and declined to fill out this paperwork.  (Tr. 543).

A February 2009 cardiac EKG revealed no abnormalities.  (Tr. 546).  A chest x-ray in November 2009 also revealed no cardiac or pulmonary abnormalities and no evidence of acute cardiopulmonary disease.  (Tr. 781).

---

[9]  Plaintiff complained that, as she lacked teeth, it is hard for her to eat vegetables.  (Tr. 27).

On physical examination in November 2009, Plaintiff complained of pain in all joints, including her knees, ankles, hips, and wrists. (Tr. 824). Physical examination showed pain on range of motion with her hip, knee, and ankle. (Tr. 825). No joint instability in knees or ankles, no focal tenderness, and some crepitus in bilateral knees.

An EMG was completed on December 9, 2009, revealing bilateral median nerve compression consistent with carpal tunnel syndrome. (Tr. 848). The degree was considered very mild to mild on the left and mild to moderate on the right. In fact, Plaintiff had nearly full strength in both hands and wrists on examination and normal sensation. (Tr. 797).

ALJ Redmond's physical RFC assessment was not adopted by ALJ Lombardo. ALJ Lombardo found that the *Drummond* ruling did not apply to the prior ALJ determination with respect to Plaintiff's physical impairments for the following reasons:

> While a literal reading of the court's opinion [*Drummond*] suggests that there may be a need to show actual medical improvement since the date of the earlier decision before changing a claimant's residual functional capacity, the Administration has taken the position (consistent with it's internal interpretation of res judicata in Hallex I-2-44-0) [sic] that only new and material evidence with respect to a claimant's functional abilities and medical condition is needed in order for a subsequent adjudicator to find a new residual functional capacity (AR-98-4/61) [sic].
>
> …a careful review of medical evidence submitted in conjunction with the current claim for SSI fails to document that the claimant has any physical impairment or combination of impairments that would be expected to result in significant work-related limitations. Therefore, from a physical standpoint, it must be surmised that that has been medical improvement to the extent that it would be inappropriate to find that the claimant has a severe physical

impairment or that she has any physical limitations that would erode her occupational base for the full range of work. Moreover, as to her physical functioning, the principles in *Drummond* would not apply with respect to the current hearing decision inasmuch as there is no evidence sufficient to establish a severe physical impairment.

(Tr. 71-72).

### 4. *Evidence of Psychological Impairments Pertaining to the Current ALJ Decision*

Plaintiff treated with South Community for a short period in 2007. (Tr. 483). At her initial intake appointment on August 2, 2007, she appeared casually dressed and mildly unkempt. (Tr. 512). At her initial psychiatric evaluation she was diagnosed with dysthymic disorder, post-traumatic stress disorder, alcohol, cannibus, and cocaine use in remission, and borderline personality disorder. (Tr. 513). She was assigned a GAF of 42.[10] It was noted that judgment and impulse control appeared to be "rather marginal." (Tr. 512).

In September 2007, Plaintiff was seen by Dr. Flexman for a consultative psychological examination. (Tr. 434-37). She presented with a disheveled appearance and looked older than her stated age. Plaintiff's eye contact was fair 30% of the time and overt pain behavior was not observed. Her attitude was apathetic and passive. Dr. Flexman diagnosed depressive disorder and malingering. (Tr. 436). He opined that

---

[10] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

Plaintiff would have moderate limitation in her ability to interact with the public, as well as in her stress tolerance and ability to adapt to changes in the work place.  (Tr. 437).

Plaintiff returned to Samaritan Behavioral Health Center in January 2008.  (Tr. 701).  She was discharged around April of 2009, when she stated that she intended to move to Mississippi.  (Tr. 614-15).  The diagnoses on discharge were major depressive disorder with psychotic features and generalized anxiety disorder.  (Tr. 614).  Plaintiff returned to treatment around December 2009, at which time she was diagnosed with major depressive disorder with psychotic features, dysthymic disorder, and generalized anxiety disorder.  (Tr. 850).  On intake, Plaintiff reported that she went to Mississippi, felt overwhelmed, slept in a van overnight, and came back to Ohio the following day.  (Tr. 853).

Plaintiff reported that she spent part of her childhood as a foster child and that she was sexually molested by another foster child at a children's home.  She indicated that she was adopted at age 15, but that her adoptive mother died in 1991.  Plaintiff had a son whom she put up for adoption.  She alleged hearing and seeing spirits, hearing dogs or pets talking to her, having a ghost from a train in her home, and various other forms of auditory and visual hallucinations.  She claimed that her grandmother tried to kill her and that her grandfather tried to jump inside her.  (Tr. 28).

On October 22, 2007, Dr. Dietz reviewed the evidence and adopted the prior ALJ's mental RFC assessment in accordance with AR 98-4.  (Tr. 455).  On February 23, 2008, these findings were affirmed at the reconsideration level by Dr. Waggnor.  (Tr. 480).

-13-

ALJ Lombardo found Plaintiff to have the severe psychological impairments of "a history of depression and anxiety (albeit reported mental problems are associated with evidence of malingering)" (Tr. 70). She acknowledged that Plaintiff's reported depressive symptoms "continue unabated since her prior hearing decision." (Tr. 75). She consequently limited Plaintiff to unskilled, low stress work with minimal personal contact with the general public based on her chronic depression and anxiety. (Tr. 76).

### 5. *Decisions of the ALJs*

In the prior decision, ALJ Redmond found Plaintiff to have the severe impairments of fibromyalgia, chronic obstructive pulmonary disease, morbid obesity, and a dysthymic disorder. However, the ALJ determined that she did not have an impairment or combination of impairments listed in, or medically equal to the ones listed in the Social Security Administration Listing of Impairments. (Tr. 118, 120). ALJ Redmond found that Plaintiff retained the functional capacity to perform the basic exertional activities associated with sedentary work, but with further restrictions. (Tr. 123). He found that Plaintiff had the additional limitations of employment that allow for a sit/stand option and requires only simple tasks with a minimal degree of personal contact. (*Id.*) ALJ Redmond found Plaintiff unable to perform her past relevant work, but found a significant number of jobs existed in the national economy that she could perform. (Tr. 126). Finally, ALJ Redmond found Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision. (*Id.*)

-14-

ALJ Lombardo reviewed the medical evidence for Plaintiff's SSI claim and determined that the record contained no new or material evidence concerning Plaintiff's mental limitations and adopted ALJ Redmond's mental limitations. However, ALJ Lombardo found that the evidence relating to Plaintiff's physical impairment showed that Plaintiff's condition had improved since ALJ Redmond's decision. Therefore, the ALJ chose not to adopt the physical limitations identified in ALJ Redmond's RFC finding. In fact, ALJ Lombardo determined that the evidence introduced after ALJ Redmond's decision showed that Plaintiff did not have any "severe" physical impairments. (Tr. 72). ALJ Lombardo concluded that Plaintiff has the RFC to perform work at all exertional levels, but with the following nonexertional limitations: unskilled low stress work with no assembly line production quotas, no fast pace, and minimal contact with the general public. (Tr. 75).

## B.

Plaintiff argues that the ALJ incorrectly applied the rule in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), that "[r]es judicata applies in an administrative law context following a trial type of hearing." (Doc. 7 at 10). Plaintiff argues that ALJ Lombardo was bound by the prior ALJ's decision unless new, material evidence was introduced. Specifically, Plaintiff contends that the ALJ failed to find "medical improvement" before denying benefits in violation of the rule in *Drummond*. As a threshold matter, the Court must determine whether the Sixth Circuit's decision in *Drummond* applies in this case.

-15-

In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Drummond*, 126 F.3d at 842. *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond* at 841. The Commissioner bears the burden to prove changed circumstances so as to escape being bound by the principles of res judicata. *Id.* at 842-43. ("We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence . . . Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.)"

Following the decision in *Drummond*, the Commissioner issued an Acquiescence Ruling mandating that ALJs in Ohio follow *Drummond* by applying res judicata to the prior assessment of a claimant's RFC and other prior findings made as part of a sequential evaluation. The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

Even if ALJ Lombardo believed that Plaintiff did not suffer from any severe physical impairments, she was not at liberty to redecide this issue. The previous ALJ determined that Plaintiff suffered from the severe impairments of fibromyalgia, chronic obstructive pulmonary disease, morbid obesity, and a dysthymic disorder. (Tr. 118). Accordingly, ALJ Lombardo was required under *Drummond* to determine whether or not the new and material evidence submitted in conjunction with the claim was sufficient to demonstrate improvement in Plaintiff's condition since the date of the last ALJ decision.

The Commissioner argues that the ALJ extensively discussed the evidence submitted since the prior ALJ's decision which showed that Plaintiff's physical condition had improved to the point that she no longer had any severe physical impairments. However, ALJ Lombardo found that "the principles of *Drummond* would not apply with respect to the current hearing decision inasmuch as there is no evidence sufficient to establish a severe physical impairment." (Tr. 72). She therefore did not address whether or not there had been improvement in the Plaintiff's physical condition since the date of the last hearing decision. The ALJ's finding that *Drummond* does not apply is clear error. Moreover, the Commissioner erroneously argues that the record demonstrates medical improvement, despite the equally faulty argument that *Drummond* does not require such a showing.

-17-

After carefully considering the parties' respective positions and the case law, the Court finds that Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) due to the ALJ's failure to apply *Drummond* to the prior initial administration determination.

### III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place."  *Faucher,* 17 F.3d at 175.  "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405."  *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

### IV.

Based upon the foregoing, the Court concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner to deny Plaintiff SSI benefits be and is **REVERSED**, and this matter be and is  **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall: (1) determine whether administrative *res judicata* applies to the prior administrative determination that Plaintiff suffered from the severe impairments of fibromyalgia, chronic obstructive pulmonary disease, morbid obesity, and a dysthymic disorder; (2) determine whether the Commissioner has met the burden to show medical improvement as set forth in *Drummond*; (3) if benefits are not awarded based upon the prior administrative determination of disability, review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible to receive SSI; (4) reevaluate the weight given to the opinions of Plaintiff's treating physicians; and (5) reconsider the Plaintiff's RFC.

**IT IS SO ORDERED.**

Date:  April 4, 2012                                      *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District  Judge

-20-